UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**CONTINENTAL CASUALTY COMPANY,**
**NATIONAL FIRE INSURANCE COMPANY**
**OF HARTFORD** and **VALLEY FORGE**
**INSURANCE COMPANY**
Plaintiffs

**Civil Action No.: 13cv208 PAC**
**ECF CASE**

**v.**

**ZOCDOC, INC.,**
Defendant.

_____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, CONTINENTAL CASUALTY COMPANY ("CCC"), NATIONAL FIRE INSURANCE COMPANY OF HARTFORD ("NFICH") and VALLEY FORGE INSURANCE COMPANY ("VFI"), foreign corporations, seeks Declaratory Relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure for purposes of determining a question of actual, immediate controversy among the parties. Plaintiffs respectfully alleges as follows:

## NATURE OF ACTION AND RELIEF SOUGHT

1. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 for the purpose of determining the rights and obligations, if any, relative to seven insurance policies.

2. Plaintiffs seek a declaration that they have no duty to defend or indemnify ZOCDOC, INC. ("ZOCDOC") with regard to a class action lawsuit filed against ZOCDOC pending in the United States District Court for the Northern District of Illinois, captioned *James L. Orrington, II DDS v. ZocDoc, Inc.,* Case No. 1:12-cv-08747 (hereinafter the "Underlying Suit").

3.     ZOCDOC tendered the Underlying Suit to VFI, NFICH and CCC and requested insurance coverage, i.e. a defense and indemnity, under seven policies of insurance issued by Plaintiffs to ZOCDOC for the consecutive one year policy periods from December 21, 2007 to December 21, 2012.

4.     In response to ZOCDOC's request for coverage, PLAINTIFFS disclaimed coverage to ZOCDOC for the Underlying Suit, including any duty to defend, under all seven policies as these policy contain exclusions, i.e. "Distribution of Material in Violation of Statutes", "Recording And Distribution Of Material Or Information In Violation of Law" and/or "Violation of Statutes That Govern Communication of Information" (collectively referred to hereafter as "TCPA Exclusions"), which preclude coverage for claims "arising directly or indirectly out of an action or omissions that violates or is alleged to violate . . . the Telephone Consumer Protection Act (TCPA)" or any similar statute.

5.     An actual, immediate controversy exists among the parties regarding whether coverage is afforded under the insurance policies issued by PLAINTIFFS to ZOCDOC for defense costs incurred, settlements paid and/or damages to be awarded against ZOCDOC in the Underlying Suit.

## PARTIES

6.     CCC is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

7.     NFICH is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois.

8.     VFI is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in Chicago, Illinois.

9.     ZOCDOC is a Delaware corporation with its principal place of business in New York, New York.

.     **JURISDICTION AND VENUE**

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorneys' fees and costs.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a) and (c) because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this District.

**GENERAL ALLEGATIONS**

A.     **THE POLICIES:**

12.     VFI issued primary general liability policies to ZOCDOC for four consecutive one year policy periods from December 21, 2007 to December 21, 2011, under policy number 2099798519.  Each policy provides an Each Occurrence limit of $1,000,000, a Personal & Advertising Injury liability limit of $1,000,000, and an Aggregate liability limit of $2,000,000. ("**VFI Policies**").  A true and accurate copy of VFI Policy 2099798519 (12/21/07 to 12/21/08) is attached hereto as **Exhibit "A",** VFI Policy 2099798519 (12/21/08 to 12/21/09) is attached hereto as **Exhibit "B",** VFI Policy 2099798519 (12/21/09 to 12/21/10) is attached hereto as **Exhibit "C",** and VFI Policy 2099798519 (12/21/10 to 12/21/11) is attached hereto as **Exhibit "D".**  The VFI Policies are incorporated as if set forth herein.  See Exhibits A through D.

13.     NFICH issued a primary general liability policies to ZOCDOC for the one year policy period from December 21, 2011 to December 21, 2012, under policy number 2099798519.  The policy provides an Each Occurrence limit of $1,000,000, a Personal & Advertising Injury liability limit of $1,000,000, and an Aggregate liability limit of $2,000,000.

14.    CCC issued commercial umbrella policies to ZOCDOC for two consecutive one year policy periods from December 21, 2007 to December 21, 2009, under policy number 2099798892.  Each policy provides an Each Occurrence limit of $1,000,000, a Personal & Advertising Injury liability limit of $1,000,000, and an Aggregate liability limit of $1,000,000. ("**CCC Policies**").  A true and accurate copy of (1) CCC Policy 2099798892 (12/21/07 to 12/21/08) is attached hereto as **Exhibit "F"**, (2) CCC Policy 2099798892 (12/21/08 to 12/21/09) is attached hereto as **Exhibit "G",** (3) CCC Policy 2099798892 (12/21/09 to 12/21/10) is attached hereto as **Exhibit "H"**, (4) CCC Policy 2099798892 (12/21/10 to 12/21/11) is attached hereto as **Exhibit "I"**, and (5) CCC Policy 2099798892 (12/21/11 to 12/21/12) is attached hereto as **Exhibit "J".**  The CCC Policies are incorporated as if set forth herein.  See Exhibits F - J.

15.    Under Coverage A— Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury) of the Businessowners Liability Coverage Form, the Primary Policies contain the following insuring agreement:

**BUSINESSOWNERS LIABILITY COVERAGE FORM**

**A.     Coverages**

**1.     Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)**

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage" or "personal and advertising

injury," to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section D – Liability And Medical Expenses Limits Of Insurance; and

(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

b.     This insurance applies:

(1)     To "bodily injury" and "property damage" only if:

(a)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b)     The "bodily injury" or "property damage" occurs during the policy period . . .

(c)     Prior to the policy period, no insured listed under Paragraph C.1. Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

(2)     To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

See Exhibit A – C Form SB-300000-A (Ed. 01/06), p1, Exhibit D Form SB-300000-B (Ed. 01/07), p1., and Exhibit E Form SB-300000-C31 (Ed. 04/10), p1.

    16.    Under Section F—Liability and Medical Expenses Definitions, the Primary Policies contain the following definitions:

    3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

    13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

    14.    "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    17.    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

6

See Exhibit A – C Form SB-300000-A (Ed. 01/06), p12-15, Exhibit D Form SB-300000-B (Ed. 01/07), p12-15, and Exhibit E Form SB-300000-C31 (Ed. 04/10), p12-15.

17.    The Primary Policies also contain the following exclusion applicable to Coverage 1:

**B.**    **Exclusions**

1.    Applicable to Business Liability Coverage

This insurance does not apply to:

**a.**    **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**p.**    **Personal And Advertising Injury**

"Personal and advertising injury":

**(1)**    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

\* \* \*

**(3)**    Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period . . .

See Exhibit A – C Form SB-300000-A (Ed. 01/06), p3 and 7, Exhibit D Form SB-300000-B (Ed. 01/07), p3 and 7, and Exhibit E Form SB-300000-C31 (Ed. 04/10), p3 and 7.

18.    The  VFI Policies also contains the following  **"EXCLUSION - VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX OR PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION"**, which provides in relevant part that "this insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Bodily injury" or "property damage" arising directly or indirectly out of any act or omission that violates or is alleged to violate:

**(1)**    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)**    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)**    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

***

This insurance does not apply to:

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising injury" arising directly or indirectly out of any act or omission that violates or is alleged to violate:

**(1)**    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)**    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)**    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

See Exhibit A-D Form SB-147078-A (Ed. 01/06).

19.    The NFICH Policy contains the following **"RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION."** With regard to Coverage 1, this endorsement provides in relevant part that:

**A.**    The following Exclusion is added to Section B. EXCLUSIONS of the Businessowners Liability Coverage Form:

8

2.      **Exclusions**

This insurance does not apply to:

q.      **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4)    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

B.      The following Exclusion is added to Section B. EXCLUSIONS, Paragraph p. Personal and Advertising Injury:

2.      **Exclusions**

This insurance does not apply to:

(15)    **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

      (1)     The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

      (2)     The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

      (3)     The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

      (4)     Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

See Exhibit E form SB-300849-A (Ed. 07/09).

20.   The CCC Policies contain the following insuring agreement:

**SECTION I – COVERAGES**

**1.**     **Insuring Agreement**

We will pay on behalf of the insured all sums that the insured becomes legally obligated to pay as "ultimate net loss" because of:

**a.**     "Bodily Injury";
**b.**     "Property Damage";
**c.**     "Personal Injury"; or
**d.**     "Advertising Injury",

caused by an "incident" which takes place during the policy period and in the policy territory.

See Exhibits F-J Form G-15057A-A, p1.

21.   The CCC umbrella policies also contain a Amendment of Definitions change endorsement, which provides that "[w]henever they appear in the policy, the phrases 'personal injury' and 'advertising injury' are deleted and replaced with 'personal and advertising injury.'" See Exhibits F-J Form G-147133-A, p1.

22.   Under Section V—Definitions of the Commercial Umbrella Plus Coverage Part, the CCC Policies contain the following pertinent definitions:

> **"Bodily injury"** means bodily injury, sickness or disease; mental injury or mental anguish sustained by a person, including death resulting from any of these.
>
> **"Incident"**
>
> a.   With respect to claims which are covered, in whole or in part, by the immediate "scheduled underlying insurance" policy (whether or not the limits thereof become reduced or exhausted), "incident" means either an occurrence or offense, depending upon which term triggers coverage in your immediate "scheduled underlying insurance" policy.
>
>   (1)   The trigger of coverage, with respect to "bodily injury" and "property damage", is an occurrence. When coverage is triggered by an occurrence, then "incident" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions that take place during this policy period.
>
>   (2)   The trigger of coverage, with respect to "personal injury" and "advertising injury", is an offense.
>
>     (a)   For "personal injury", when coverage is triggered by an offense, then "incident" means an act or series of acts of the same or similar nature committed during this policy period. All loss arising out of such act or series of acts, regardless of the frequency thereof or the number of claimants, shall be deemed to arise out of one offense.
>
>     (b)   For "advertising injury" when coverage is triggered by an offense, then "incident"

means an act or series of acts in which the same or similar advertising material is used, regardless of the number or kind of media used, committed during this policy period. All damages involving the same injurious material or act, regardless of the:

**(i)**　　frequency or repetition thereof;

**(ii)**　　number or kind of media used; or

**(iii)**　　number of claimants;

shall be deemed to arise out of one offense.

**b.**　　With respect to claims which are covered by this policy, but which are not covered by the immediate "scheduled underlying insurance", "incident" means either an occurrence or offense.

**"Retained limit"** means the amount stated in Item **4.** of the Declarations.

**"Scheduled underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance including renewal or replacement of such contracts which are not more restrictive than those listed in the aforementioned Schedule of Underlying Insurance.

**"Ultimate net loss"**

**a.**　　"Ultimate net loss" means the actual damages the insured is legally obligated to pay, either through:

**(1)**　　final adjudication on the merits; or

**(2)**　　through compromise settlement with our written consent or direction;

because of "incident(s)" covered by this policy.

However, it includes the above mentioned sums only after deducting all other recoveries and salvages.

**b.**　　"Ultimate net loss" does not include the following:

**(1)**　　costs or expenses related to:

**(a)**   litigation,

**(b)**   settlement;

**(c)**   adjustment; or

**(d)**   appeals;

nor costs or expenses incident to the same which an "underlying insurer" has paid, incurred or is obligated to pay to or on behalf of the insured;

**(2)**   pre-judgment interest;

**(3)**   office costs and expenses and salaries and expenses of the employees of an insured;

**(4)**   our office costs and expenses and salaries of our employees; or

**(5)**   general retainer and/or monitoring fees of counsel retained by the insured.

**"Underlying insurer"** means an insurer whose policy covers an "incident" also covered by this policy but does not include insurers whose policies were purchased specifically to be in excess of this policy. It includes all insurers providing:

**a.**   "unscheduled underlying insurance"; and

**b.**   "scheduled underlying insurance".

**"Unscheduled underlying insurance"**

**a.**   "Unscheduled underlying insurance" means insurance policies available to an insured, whether:

**(1)**   primary;

**(2)**   excess;

**(3)**   excess-contingent; or

**(4)**   otherwise;

except the policies listed in the Schedule of Underlying Insurance.

      **b.**      "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

See Exhibits F-J Form G-15057A-A, p8-11.

23.    Under "Amendment of Definitions" The CCC Policies contain the following additional relevant definitions:

**"Personal and advertising injury"** means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

5.      Oral or written publication, in any manner that violates a person's right of privacy . . .

**"Property damage"** means:

1.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2.      Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

See Exhibits F-J Form G-147133-A, p1.

24.    The CCC Policies also contains the following pertinent exclusions:

2.      **Exclusions**

This insurance does not apply to:

**a.**      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property . . .

(See Exhibits F-J Form G-15057A-A, p1)

**EXCLUSION – VIOLATION OF STATUTES THAT
GOVERN COMMUNICATION OF INFORMATION**

This insurance does not apply to any liability arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information…

See Exhibit F-J Form G-146878-A (Ed. 05/05).

25.    In addition to the foregoing provisions, Plaintiffs plead all other conditions, terms, warranties, limitations, definitions and exclusions contained in the Policies that may also be found to apply as Plaintiff's investigation of this matter continues, and it reserves the right to further amend the instant Complaint for Declaratory Judgment as additional and/or more specific information becomes available.

**B.    THE UNDERLYING SUIT**

26.    On November 1, 2012, James L. Orrington, II, DDS., PC ( "Underlying Plaintiff") purports to bring a class action lawsuit on behalf of itself and a putative class against ZOCDOC, in the United States District Court for the Northern District of Illinois (the "Underlying Complaint"). A copy of the Underlying Complaint is attached hereto as **Exhibit "K"**.

27.    The Underlying Suit arises out of an allegation that on or about January 31, 2012 and May 22, 2012, Underlying Plaintiff received unsolicited advertisements from ZOCDOC faxed. Underlying Plaintiff alleges that it had no prior relationship with ZOCDOC and did not

28.   The Underlying Complaint asserts three counts against ZOCDOC.  See Exhibit K.

29.   The First Count, titled "**Count I–TCPA,**" alleges that the TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine."  Underlying Plaintiff alleges that ZOCDOC violated the TCPA and that Underlying Plaintiff and the class members "suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed, as a result."  Underlying Plaintiff further alleges that its "statutory right of privacy was invaded."  See ¶22, 25 of Underlying Complaint at Exhibit K.

30.   Underlying Plaintiff purports to bring the First Count on behalf of itself and the Plaintiffs class, which is defined as:

> (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658) or such shorter period during which faxes were sent by or on behalf of ZOCDOC, Inc. (c) were sent faxes by or on behalf of defendant ZOCDOC, Inc., promoting its goods or services for sale (d) that did not contain an "opt out" notice as is described in 47 U.S.C. §227.

See ¶29 of Underlying Complaint at Exhibit K.

31.   The Second Count, titled "**Count II – Illinois Consumer Fraud Act ("ICFA"),**" alleges that ZOCDOC engaged in "unfair acts and practices, in violation of ICFA §2, 215 ILCS 5/5/2, by sending unsolicited faxed advertisements to" the Underlying Plaintiff and others. Underlying Plaintiff alleges that ZOCDOC's "conduct caused recipients of their advertising to bear the cost thereof" and that "this gave [ZOCDOC] an unfair competitive advantage over businesses that advertise lawfully."  See ¶38, 43 of Underlying Complaint at Exhibit K.

32.    Underlying Plaintiff purports to bring the Second Count on behalf of itself and a Plaintiffs class which is defined as:

> (a) all persons with Illinois fax numbers (b) who, on or after a date three years prior to the filing of this action, or such shorter period during which faxes were sent by or on behalf of defendant ZOCDOC, Inc. (c) were sent faxes by or on behalf of defendant ZOCDOC Healthcare Inc., promoting its goods or services for sale (d) that did not contain an "opt out" notice such as is described in 47 U.S.C. §227.

See ¶46 of Underlying Complaint at Exhibit K.

33.    The Third Count, titled "**Count III – Conversion,**" alleges that "[b]y sending Underlying Plaintiff and the class member's unsolicited faxes, defendant converted to its own use ink or toner and paper belonging to Plaintiffs and the class members."  The Underlying Plaintiff further alleges that "Defendant knew or should have known that such appropriation of the paper and ink and toner was wrongful and without authorization."   See ¶54, 57 of Underlying Complaint at Exhibit K.

34.    The Underlying Plaintiff purports to bring this Third Count on behalf of itself and a Plaintiffs class which is defined as:

> (a) all persons (b) who, on or after a date five years prior to the filing of this action, or such shorter period during which faxes were sent by or on behalf of defendant ZOCDOC, Inc. (c) were sent faxes by or on behalf of defendant ZOCDOC, Inc., promoting its goods or services for sale (d) that did not contain an "opt out" notice as described in 47 U.S.C. §227.

See ¶60 of Underlying Complaint at Exhibit K.

35.    As relief, Underlying Plaintiff, on behalf of itself and the putative class, seeks actual damages, statutory damages, an injunction preventing the further transmission of unsolicited fax advertising; costs of suit and "[s]uch other and further relief as the Court deems just and proper."  See WHEREFORE Clause of Underlying Complaint at Exhibit K.

**C.      ADDITIONAL RELEVANT FACTS**

36.   ZOCDOC tendered the Underlying Complaint to PLAINTIFFS and requested that PLAINTIFFS  agree to provide it with defense and indemnity coverage for the claims asserted in the Underlying Suit under the Policies.

37.   PLAINTIFFS issued a letter to ZOCDOC wherein they disclaimed coverage to ZOCDOC for the Underlying Suit, including any duty to defend, under all seven policies as these policy contain TCPA Exclusions which preclude coverage for claims "arising directly or indirectly out of an action or omissions that violates or is alleged to violate . . . the Telephone Consumer Protection Act (TCPA)" or any similar statute.   A copy of Plaintiffs' Disclaimer Letter is attached hereto as **Exhibit "L"**.

**COUNT I**

**FOR DECLARATORY JUDGMENT THAT PLAINTIFFS DO NOT
OWE A DUTY TO DEFEND ZOCDOC IN THE UNDERLYING SUIT**

38.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

39.   Plaintiffs do not owe a duty to defend ZOCDOC under the Policies for the Underlying Suit for the following reasons:

A.     The Underlying Complaint does not allege "bodily injury."

B.     The Underlying Complaint does not allege "property damage."

C.     The Underlying Complaint does not allege "personal and advertising injury."

D.     Even if the Underlying Complaint alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence."

E.     Even if the Underlying Complaint alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

F. Even if the Underlying Complaint alleged "bodily injury," "property damage," or "personal and advertising injury," which it does not, the TCPA Exclusions contained in the Policies bar coverage.

40. Defendant disagrees with Plaintiffs' coverage position and maintains that Plaintiffs owe a duty to defend ZOCDOC under the Policies with regard to the Underlying Suit.

41. An actual and immediate controversy within the meaning of 28 U.S.C. § 2201 exists between Plaintiffs and Defendant concerning whether the Policies require Plaintiffs to defend ZOCDOC in the Underlying Suit.

42. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs seek a judicial declaration that they have no duty to defend ZOCDOC and/or reimburse ZOCDOC for defense costs incurred with regard to the Underlying Suit under the Policies.

<u>**COUNT II**</u>

**FOR DECLARATORY JUDGMENT THAT PLAINTIFFS DO NOT HAVE A DUTY TO INDEMNIFY ZOCDOC IN THE UNDERLYING SUIT**

43. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

44. Plaintiffs do not owe a duty to indemnify ZOCDOC under the Policies for the Underlying Suit for the following reasons:

A. The Underlying Complaint does not allege "bodily injury."

B. The Underlying Complaint does not allege "property damage."

C. The Underlying Complaint does not allege "personal and advertising injury."

D. Even if the Underlying Complaint alleged "bodily injury" or "property damage," which it does not, any alleged "bodily injury" or "property damage" was not caused by an "occurrence."

E. Even if the Underlying Complaint alleged "bodily injury" or "property damage," which it does not, the "Expected or Intended" exclusion bars coverage.

      F.      Even if the Underlying Complaint alleged "bodily injury," "property damage," or "personal and advertising injury," which it does not, the TCPA Exclusions contained in the Policies bars coverage.

45.    Defendant disagrees with Plaintiffs' coverage position and maintains that Plaintiffs owe a duty to indemnify ZOCDOC under the Policies with regard to the Underlying Suit, including any settlement negotiated among the parties and/or judgment rendered against ZOCDOC in the Underlying Suit.

46.    An actual and immediate controversy within the meaning of 28 U.S.C. § 2201 exists between Plaintiffs and Defendant concerning whether the Policies require Plaintiffs to indemnify ZOCDOC in the Underlying Suit.

47.    Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs seek a judicial declaration that they have no duty to indemnify ZOCDOC under the Policies for the claims and alleged damages that are the subject of the Underlying Suit.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for a judgment that:

(a)    Plaintiffs have no duty to defend ZOCDOC under the Policies and/or reimburse Defendant for defense costs incurred with respect to the claims asserted against ZOCDOC in the Underlying Suit;

(b)    Plaintiffs have no duty to indemnify ZOCDOC under the Policies with respect to the claims asserted against ZOCDOC in the Underlying Suit;

(c)    For such other and further relief this Court deems just and proper, including but not limited to, an award of fees and costs in this action.

## <u>PLAINTIFFS DEMANDS A JURY TRIAL.</u>

Dated: January 7, 2013

Respectfully submitted,

Colliau Carluccio Keener Morrow Peterson & Parsons
Attorneys for Plaintiffs

_____

Lisa Shreiber, Esq. (LS9927)
125 Broad St, 7th Floor
New York, NY 10004
 (212)440-7327
Lisa.Shreiber@CNA.com